Buel Ray WORTHAM *v.* LITTLE ROCK NEWSPAPERS, INC.

81-97                                    618 S.W. 2d 156

Supreme Court of Arkansas
Opinion delivered June 22, 1981

*R. W Laster* and *C. James Kubicek*, for appellant.

*Wright, Lindsey & Jennings*, for appellee.

Darrell Hickman, Justice. Buel Ray Wortham filed a defamation suit against Little Rock Newspapers, Inc., which publishes a state-wide newspaper, the Arkansas Democrat. He asked for compensatory and punitive damages. Wortham held a license to sell beer at the Sportsman's Inn and he claimed that a series of articles printed by the Democrat caused him to lose profits and prevented him from selling the Sportsman's Inn.

The circuit court granted the newspaper's motion for summary judgment, dismissing Wortham's suit. The court found no disputed facts, no malice, and that the articles in question were not libelous. We affirm.

In 1979, a reporter for the Democrat, Gene Nail, wrote a series of articles about the Alcoholic Beverage Control Board. The articles were headlined: "ABC files indicate officials habitually ignored liquor laws"; "Two liquor

licenses may violate law"; "Director will review cases soon"; "Clinton says aides believe liquor actions are legitimate." In these articles it was mentioned that the Sportsman's Inn had been issued an illegal license by the ABC Board. One of those references read: "The Sportsman's Inn was apparently ineligible for a beer license because the Mad Dog Saloon, a previous business at the same address, had its license revoked within one year before the application for a new permit." Another reference said: "The apparent illegality of the Sportsman's Inn permit stems from another law which states that 'where a permit for any premises permitted has been revoked, no permit shall thereafter be issued for a period of one year after such revocation for such permitted premises or any part of the building containing such permitted premises.' " The reporter noted that three months earlier the ABC Board had declined to issue a license to another person for the same location and evidently based his reference to the Sportsman's Inn license on this fact.

As it turned out, Wortham obtained a *beer* license, not a *liquor* license. The law treats these licenses differently. A beer license is exempted from the prohibition but a liquor license is not. *See* Ark. Stat. Ann. § 48-107 (Repl. 1977). The articles mentioned that the attorney for the ABC Board advised the Board that its actions were proper because there was an exemption in the case of a beer license.

In a memorandum to the Governor of Arkansas the same reporter furnished a list of the findings he made in investigating the practices of the ABC Board. One of nine questionable actions by the Board mentioned the Sportsman's Inn license. It simply read: "Illegal license issued to a location that had a license revoked within one year. 48-315."

The Sportsman's Inn license was actually a small part of the articles in question. Another license which was issued to Jimmy Doyle Country Club was more extensively discussed.

There were no disputed facts in this case. It was admitted that the Democrat published the articles and the reporter stated under oath that he had no malice toward

Wortham. Wortham admitted under oath that he knew of no malice that the reporter or newspaper had toward him.

Wortham's claim is that the publications were defamatory because they implied that Wortham held his license illegally and was operating a business in violation of the state law, and the articles charged him with a criminal act by implying that a conspiracy existed between him and state officials to violate the laws of the State of Arkansas.

Since there were no disputed facts, the court was correct in considering summary judgment as a remedy. *Ryder Truck Rental, Inc.* v. *Kramer*, 263 Ark. 169, 563 S.W. 2d 451 (1978). Certainly there was no defamation per se because there was no statement that Wortham or the Sportsman's Inn had committed a criminal act. That leaves us with the question of whether defamation may be implied by innuendo.

The test in that regard was discussed in *Roberts* v. *Love*, 231 Ark. 886, 333 S.W. 2d 897 (1960). *See also* Note, *Defamatory Innuendo From Innocent Language*, 6 Ark. L. Rev. 493 (1952). The words to be defamatory in such cases should be susceptible of two meanings, one defamatory and one harmless. In that regard we read the words in their plain and natural meaning, as they would be interpreted by a reader of the newspaper considering the articles as a whole.

The articles implied no illegal conduct on the part of the Sportsman's Inn or Wortham. To the contrary, all of the implications are directed toward the ABC Board and its officials. There is no suggestion that Sportsman's Inn or Wortham in any way improperly influenced the Board, committed any crime, or did anything wrong in obtaining its license; only that the Board was wrong in issuing the license. It would be a strained and forced interpretation to say that Wortham was defamed, a posture the law does not take in such a case. W. Prosser, The Handbook of the Law of Torts, 763 (3d ed. 1964).

The concurring opinion proposes a disposition of this case on whether Wortham was a public figure. That is not

an issue before us on appeal.

The trial court was right in granting summary judgment.

Affirmed.

DUDLEY, J., concurs.

ROBERT H. DUDLEY, Justice, concurring. While concurring in the decision, I disagree with the reasoning of the majority which is bottomed on the premise that it takes "a strained and forced interpretation to say Wortham was defamed." This case is before us on a motion for summary judgment and we are required to view the evidence in the light most favorable to the party resisting the motion, appellant Wortham, with all doubts and inferences being resolved against the moving party, appellee Little Rock Newspapers. The published articles continually used the phrases "may violate the law," "appear to violate State laws," "apparently violate State laws," "possible illegal license," and the "apparent illegality of the Sportsman's Inn permit." Most reasonable and fair-minded readers would have concluded that appellant Wortham or the Director of the Department of Alcoholic Beverage Control, or both, violated the law. In truth, no law was violated. Logically, this summary judgment procedure mandates a finding that a valid dispute exists about whether Wortham was defamed.

Appellant, in order to operate his two taverns, had to obtain the required licenses from the Department of Alcoholic Beverage Control. The sale of intoxicating liquors is the most heavily regulated of public privileges. Ark. Stat. Ann. Title 48. As a part of the process to obtain licenses Wortham had to publish public notices of his applications. Ark. Stat. Ann. § 48-528 (G) (Repl. 1977). Those notices, which the applicant must have "caused to be published at least once a week for two consecutive weeks in a legal newspaper of general circulation ...," must give the name of the applicant and the name of his proposed business, state that he is of good moral character, has never been convicted of a felony, and has never been convicted of violating liquor

laws. The Director must then notify the sheriff, the chief of police, the prosecuting attorney, the circuit judge and the city board of directors of the pending application. § 48-528 (I). If any one of these public officials protests the granting of the license to the applicant, it must be delayed until a public hearing is conducted. § 48-528 (J). Clearly, a person becomes a public figure by the time he obtains a public liquor or beer license.

Given this set of facts we must cope with the problem of whether the matter is privileged, for if it is, then no action will lie, and if it is not, the summary judgment must be reversed. To struggle with the facts in each case is quite hopeless and, in my opinion, a needless quagmire.

The narrow issue is freedom of the press to criticize, albeit wrong, the governmental issuance of a beer permit to an individual who is a public licensee. The majority would leave the would-be critic subject to the quieting effect of possible libel actions to be decided on a case by case basis. The result will be to dampen the vigor and limit the variety of public debate, an erosion of the First Amendment protection. To allow the imposition of damages through libel laws for a discussion of public affairs is to impinge upon free and open discussion. Only the hardiest of publishers will engage in public debate in the face of such financial risk.

I would hold that Wortham, a public licensee, was defamed but that the First Amendment prohibits the imposition of damages for this discussion of public affairs.