Robert "Bob" PRITCHARD *v.* THE TIMES SOUTHWEST BROADCASTING, INC., an Arkansas Corporation, d/b/a KFSM-TV, and Tom EVELD

82-116                                         642 S.W.2d 877

Supreme Court of Arkansas
Opinion delivered November 29, 1982
[Rehearing denied January 10, 1983.*]

---

*HICKMAN, J., would grant rehearing as to liability of Eveld.

*Sam Sexton, Jr.* of *Sexton, Nolan & Robb, P.A.,* for appellant.

*Cearley, Mitchell & Roachell,* by: *Charles D. Harrison,* for appellee Eveld.

*Hardin, Jesson & Dawson,* by: *Bradley D. Jesson* and *Betsy Hall,* for appellee The Times Southwest Broadcasting, Inc.

STEELE HAYS, Justice. This case arises from a defamation suit by the appellant against the Times Southwest Broadcasting, Inc., d/b/a KFSM-TV and Tom Eveld. The court gave a directed verdict for both appellees and from that decision, appellant brings this appeal. We agree with the trial court decision and will discuss first, the arguments raised in the case against KFSM.

In February of 1980, KFSM devoted a segment of its news broadcast to the appellant, Sheriff of Franklin County. A number of statements were made concerning the Sheriff, including the fact that his office had been investigated by a Grand Jury, that he had had two lawsuits filed against him with one still pending, and a state wildlife officer had written a memo to his superior relating threats he said the Sheriff had made. All of the above statements are true, and the Sheriff is not contesting the truth of these statements. Rather, he claims that the broadcast intended to convey to the viewer that one of the lawsuits and the allegations of the wildlife officer were two of the matters considered by the Grand Jury, when in fact this was not the case. He argues that the reporter knew these two matters weren't before the Grand Jury and therefore, there was actual malice on the part of KFSM, as required by *New York Times* v. *Sullivan,* 376 U.S. 254 (1964), in recovery for defamation by a public official.

By a review of the transcript of the recording, we find no such intent or implication. The broadcast began with a statement that the County Grand Jury had investigated a number of complaints against the Sheriff's Department. This was true and no mention is made of what allegations were investigated. The broadcast continued as follows:

[Quorum court member]:

I would like to see a Federal Grand Jury, I think that is the only way we are ever going to get it cleared up, because people don't have any faith in our local system around here any more.

[Reporter]:

The [quorum court member] called for a Federal Grand Jury investigation following a quorum court meeting last fall. He and a number of other county residents don't think the County Grand Jury dug deeply enough into the way this man runs the Sheriff's Department. Bob Pritchard has been Sheriff of Franklin County for six years and his father before that. Pritchard has been

re-elected two times, usually without a serious challenge. In the last election, he had three opponents, but Pritchard managed to get enough of the county's eighty-two hundred registered voters to avoid even a run-off. Still, it hasn't all been smooth sailing.

The reporter then related those matters in contention by the appellant.

We find no statements in this portion of the broadcast that are defamatory on their face, nor does the appellant point to any. We look then to see if there is defamation by innuendo. We stated in *Wortham* v. *Little Rock Newspapers, Inc.*, 273 Ark. 179, 618 S.W.2d 156 (1981), "The words to be defamatory in such cases should be susceptible of two meanings, one defamatory and one harmless. In that regard, we read the words in their plain and natural meaning, as they would be interpreted by a reader of the newspaper considering the articles as a whole."

There are no statements made here that are not true. The Sheriff had been investigated by the Grand Jury because of a number of complaints received by the judge who had called it, the Sheriff had had a civil rights suit filed against him, and the wildlife officer had written a memo to his superior, relaying threats the Sheriff had made. The comments by the reporter on these two incidents makes no reference to a connection between them and the Grand Jury investigation. The initial Grand Jury comment is followed by other items, including the popularity of the Sheriff in the county. The only connection between the Grand Jury and these two incidents is their inclusion in the same news broadcast. Also, there is no testimony that the reporters intended to convey the message appellant suggests. Reading the article as a whole and taking the words in their plain meaning, we cannot find them defamatory. As we stated in *Wortham, supra,* "It would be a strained and forced interpretation to say that [the plaintiff] was defamed, a posture that the law does not take in such a case." Because we find no defamation here, it follows that we find no actual malice.

The appellant also argues that another portion of the broadcast was false and the reporter should have known it was false. In that portion the reporter stated that some people were saying the Sheriff had had influence over the Grand Jury investigating him. Appellant claims the reporter's two sources were unreliable and that the reporter should have known that. One of the sources was subsequently indicted and although the reporter testified she wasn't aware of this, the appellant claims the reporter should have known this because it was public record. The other source had two children who had been indicted. The reporter testified she was aware of this as to one of the children but could not remember about the other.

Since *New York Times* v. *Sullivan,* the Supreme Court has outlined further the guidelines for interpreting "actual malice" — the knowledge that a statement was false or the reckless disregard for its falsity. In *Beckley Newspapers Corp.* v. *Hanks,* 389 U.S. 81 (1967), the newspaper admitted it had not investigated the charges made, but the court held failure to investigate did not amount to the high degree of awareness of probable falsity demanded by *Sullivan.* And in *St. Amant* v. *Thompson,* 390 U.S. 727 (1968), the Supreme Court said reckless conduct wouldn't be measured by what a reasonably prudent man would publish or investigate, but there must be sufficient evidence to show that the "defendant in fact entertained serious doubts as to the truth of the publication. . . . Failure to investigate does not in itself establish bad faith."

There can be no serious doubt that the broadcast came well within these guidelines. The claims appellant makes about the sources are of questionable relevancy as to the reliability of these sources, and are not of the magnitude of "serious doubt." And if perhaps only *some* doubt is raised, failure to investigate will not establish bad faith. There is no question but that proof of actual malice is absent here.

As to the appellant's case about Eveld, some background information is necessary. Early in 1979, Eveld proposed to move his liquor store to another location, which the Sheriff opposed because he believed the change would

create law enforcement problems. Considerable tension between the two men resulted, including rumors allegedly being spread about the appellant by Eveld. The conflict culminated in a confrontation in April, in front of Eveld's liquor store. By the appellant's own testimony, he admitted calling Eveld on the phone and telling him he was coming to his store to put an end to the things that Eveld had been saying. What precisely ensued after the Sheriff's arrival is not clear. But again, by his own account he arrived at the store with his gun drawn. He said Eveld did not have a gun nor did he see any gun. He said they exchanged some heated remarks and that " . . . [Eveld] got rather nervous, got to hollering and I swung with my fist and missed him. He went to the back of the car, and I did have my gun out, and he threw up his hand and I threw up mine, he hit the gun and hit the back of the car and run. To my knowledge when [Eveld] went around the corner, that is the last time I seen him." Eveld subsequently filed suit against the appellant and that case is pending.

In Eveld's version of the scuffle, he claims that appellant hit him with his pistol. The only variance in the allegations of Eveld concerning this scuffle that appellant raises on appeal, is that part which refers to the appellant hitting Eveld in the head with the pistol. The appellant argues that the jury might have found that Eveld had fabricated that part of the story.

The truth of the matter is a defense to a charge of defamation, but the exact truth is not required.

> . . . [I]t is now generally agreed that it is not necessary to prove the literal truth of the accusation in every detail, and that it is sufficient to show that the imputation is substantially true, or as it is often put, to justify the "gist", the "sting" or the "substantial truth" of the defamation. Thus an accusation that the mayor of a town has wasted $80,000 of the taxpayer's money has been held to be justified by proof that he wasted $17,500, since there is no more opprobrium attached to the greater amount. Prosser, Handbook of the Law of Torts, 798-99 (4th ed. 1971).

One example of the application of this principle is in *Smith v. Byrd*, 225 Miss. 331, 83 So.2d 172 (1955) where a statement that a sheriff shot a man was justified by proof that he had acted in concert with a deputy who had actually shot him.

In this case, the defendant's remarks were allegedly not precise in their truth. But the substance of the story is corroborated by the appellant himself and represents admitted misconduct on his part. Whether or not the appellant's pistol actually came in contact with Eveld's head, does not alter the gist or the "sting" of the statements. We find the truth of the defamation in this case meets the requirements for the defense of truth.

The appellant also contends that in defamation cases the judge is without authority to take the decision from the jury. The argument is without merit. We have affirmed defamation cases on summary judgment on more than one occasion: *Lancaster* v. *Daily Banner-News Publishing Co.,* 274 Ark. 145, 622 S.W.2d 671 (1981), *Wortham, supra;* and we recently affirmed a defamation case on a directed verdict, *Baker* v. *Mann,* 276 Ark. 278, 634 S.W.2d 147 (1982).

In determining on appeal the correctness of the trial court's action concerning a motion for a directed verdict by either party, the test is to take that view of the evidence that is most favorable to the party against whom the verdict is sought and to give it its highest probative value, taking into account all reasonable inferences deducible from it, and to grant the motion only if the evidence viewed in that light would be so insubstantial as to require that a jury verdict for the party be set aside. *Dan Cowling and Associates* v. *Clinton Board of Education,* 273 Ark. 214, 618 S.W.2d 158 (1981).

In viewing the evidence in this light, for the reasons already stated, we find that both the defendants provided more than substantial evidence from which to conclude that either no defamatory statements had been made, or if so, there was no actual malice.