Charles B. SANDERS d/b/a Fayetteville Marine *v.* Hila Mae WALKER

89-15                                                          767 S.W.2d 526

Supreme Court of Arkansas
Opinion delivered April 10, 1989

*Putnam & Maglothin Law Offices*, by: *Charles L. Stutte*, for appellant.

*Everett & Gladwin*, by: *John C. Everett*, for appellee.

STEELE HAYS, Justice. Appellant Charles B. Sanders, doing business as Fayetteville Marine, brought this action against appellee Hila Mae Walker for damages resulting from a fire in a building which housed Sanders's retail boat business. The building, constructed around 1965, belonged to Ms. Walker and was occupied by Sanders under a verbal lease on a month to month basis. Sanders had been in the building since 1982, and the loss occurred on February 19, 1987.

Sanders's complaint alleged that he was entitled to a recovery based on negligence, express and implied warranties of habitability, and strict liability. Prior to trial the court granted summary judgment on the issue of strict liability and at the close of the plaintiff's case granted a directed verdict on the allegations of negligence and breach of warranty. Charles Sanders has appealed. We affirm.

The test concerning the granting of a motion for a directed verdict by the trial court has been clearly stated. The evidence, with all reasonable inferences, is viewed in the light most favorable to the party opposing the motion, and given its highest and strongest probative value. When viewed in that light if the evidence is so lacking in substance that it would require that a jury verdict be set aside, the motion must be granted. *Pritchard*

v. *Times Southwest Broadcasting, Inc.*, 277 Ark. 458, 642 S.W.2d 877 (1982); *Cowling* v. *Clinton Board of Education*, 273 Ark. 214, 618 S.W.2d 158 (1981). Evidence is said to be substantial when it "is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture." 4 R. Ford, *Law on Evidence* § 549 (1935); *DuPont* v. *Dillaha*, 280 Ark. 477, 659 S.W.2d 756 (1983).

Mr. Sanders and Ms. Walker had had previous dealings and were good friends. Sanders testified Ms. Walker had offered a written lease but he declined because the building was going to need some repairs and he did not want to assume that responsibility. "I did not ask Ms. Walker what kind of shape the building was in. I think the only conversation that took place was she asked me if I wanted it month to month or on a lease and I said month to month because of the fact that I don't want to maintain it." "I knew it was an old building." Mr. Sanders and Ms. Walker did not specifically agree as to who would assume responsibility for wiring or other repairs.

When Sanders moved in there were large freezer units along one wall, but some months later Ms. Walker's manager, Ronnie Skelton, made arrangements to remove them. After the units were removed Sanders noticed loose electrical wiring, but Ronnie Skelton assured him the wires were dead. Sanders was not aware of any problems with the electrical system from the time of occupancy until the fire.

Mr. Larry Poage, in charge of fire prevention and investigation for the Fayetteville Fire Department, participated in putting out the fire and then entered the building to investigate. He determined that the fire originated in a circuit box, which he believed failed to break properly, resulting in the fire. He testified that a short circuit occurred, which could have resulted from a surge of electrical power caused by a car striking a telephone pole, or from high winds, which had occurred the day of the fire, or from an appliance or piece of equipment in the building coming on, or from lightning, or "any one of a dozen things." He said a power surge was a common occurrence and a circuit box was designed to switch and break off the power from going to that

circuit. "I have seen situations in which circuit breakers don't break or fall out when, say, lightning hits them. They don't fall out, they just switch back, like a light switch. It is not uncommon for them to malfunction if lightning is around." The gist of Mr. Poage's testimony was that although he was confident the fire started in the circuit box, he could not say what caused it.

Mr. John Durham testified that at the time of the fire he was assistant Fire Inspector with the Fayetteville Fire Department assisting Captain Poage. He had inspected these premises in 1981 for fire prevention and had listed a number of violations of the fire code, including the lack of a cover on the circuit box. Whether these had been subsequently corrected, he did not know, except that after the fire he noticed that the cover on the circuit box had been replaced. He said none of the listed items from his inspection had anything to do with the fire. He attributed the fire to a malfunction in the main electrical distribution panel (the circuit box) on the "service side." "It is my opinion that there was an undue stress or load on the inside of the electrical distribution panel. Why? I do not know." "I do not know what caused the stress to be put on the system, but as a result, there was a weak link inside the box and we had our fire." Mr. Durham testified that when he inspected the circuit box in 1981 he found no problems in it, other than the lack of a cover. He testified that he did not know what caused the electrical panel to fail, but acknowledged the same possible causes as Mr. Poage. "Though I don't know what caused the undue stress, it is my opinion that the undue stress, when put into the system, resulting in a fire because there was a weak link in that panel box."

I

*Negligence*

Appellant's theory of negligence is threefold: a) that Ms. Walker was on notice before Mr. Sanders rented the building that the building was not in compliance with the local fire code; b) that after Sanders took possession Ms. Walker still maintained responsibility for the electrical system, as evidenced by Ronnie Skelton supervising the removal of the freezer units, and c) that had the electrical panel box and surge suppressor functioned properly, the fire would not have occurred.

■ Whatever might be said about the proof in support of those theories, one thing stands out—there was no proof that any negligence by the defendant was a proximate cause of appellant's damage, an essential element of any claim of negligence. *Grain Dealers Mutual Ins. Co.* v. *Porterfield*, 287 Ark. 27, 695 S.W.2d 833 (1985). As to the items in nonconformance with the fire code, Mr. Durham's uncontroverted testimony was that the items he noted in his 1981 inspection of the building had nothing to do with the fire. As to the removal of the freezer units, the evidence, also uncontroverted, was that the fire and the removal of the freezer units were unrelated. Whether or not it can be inferred that Ms. Walker assumed responsibility for the electrical system is ambiguous at best, but even if we could agree that she undertook that duty, there is no proof that her negligence permitted the condition to arise or that, by the exercise of reasonable care, she or agents could have prevented it. Without some fuller explanation of the reason the fire occurred, we believe the trial court was right to direct a verdict to the negligence counts of the complaint. *Glidwell, Adm.* v. *Arkhola Sand and Gravel Co.*, 212 Ark. 838, 191 S.W.2d 455 (1948); *Williams, Adm.* v. *Lauderdale*, 209 Ark. 418, 191 S.W.2d 455 (1945); AMI 203.

## II

### *Express and implied warranties of habitability*

Appellant cites us to nothing that would sustain a finding of an express warranty by Ms. Walker as to the condition of the premises and the record refutes any such contention.

As to an implied warranty of habitability, appellant tracks the development of recent changes in the earlier common law of nonliability of landlords, citing cases from our own as well as other jurisdictions: *Blagg* v. *Fred Hunt & Co.*, 272 Ark. 185, 612 S.W.2d 321 (1981); *Sargent* v. *Ross*, 113 N.H. 388, 308 A.2d 528 (1973); *Kline* v. *Burns*, 111 N.H. 87, 276 A.2d 248 (1971); *Wawak* v. *Stewart*, 247 Ark. 1093, 449 S.W.2d 922 (1970). Appellant contends, in short, that when Ms. Walker rented the building to Mr. Sanders she impliedly warranted the premises to be fundamentally safe.

In *Wawak* this court did recognize for the first time an implied warranty of fitness in a sale of a new dwelling. A decade

later in *Blagg* v. *Fred Hunt & Co., supra*, the doctrine was extended to a sale involving parties who were not in privity with the original vendor-builder.

■ Appellee points to the obvious distinction between the case at bar and the *Wawak* and *Blagg* cases—the dwellings in Wawak and Blagg were newly constructed, both less than a year old, whereas the building in this case is easily twenty years old. In *Blagg* we specifically observed that an implied warranty will expire after a reasonable time. Without suggesting that on this proof a submissible factual issue existed for breach of an implied warranty, we believe that time had dissolved any warranty of the fitness of these premises.

## III

### *Strict liability*

We have very little in the way of an abstract on the issue of strict liability. The motion for summary judgment, the response and any supporting affidavits have not been abstracted and we are left with only a general impression of how this issue was presented to, and resolved by, the trial court. Appellant argues that a commercial building is a "product" within the meaning of the Arkansas strict liability statute. Ark. Code Ann. § 4-86-102 (1987). He cites *Blagg* v. *Fred Hunt & Co.*, 272 Ark. 185, 612 S.W.2d 321 (1981), where we held that a cause of action based on strict liability could exist where the "product" was a newly constructed dwelling.

■ In this case, however, in addition to the problem of proximate cause, already noted, we must assume that the appellant failed to satisfy the trial judge that he could meet the requirements of § 4-86-102 by showing that Ms. Walker was "engaged in the business of . . . leasing, or otherwise distributing the product;" or that "[t]he product was supplied by [her] in a defective condition which rendered it unreasonably dangerous." Certainly we find nothing in the record as abstracted that could support a factual finding that the "defect" in the circuit box existed in 1982 when the building was leased to appellant.

For the reasons stated, the judgment is affirmed.