JRT, INC., Plaintiff/Appellant,

v.

TCBY SYSTEMS, INC.; TCBY Enterprises, Inc.; Americana Foods, Inc.; Defendants/Appellees,

Timothy David Nickodemus, Defendant.

No. 94–3258.

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1995.

Decided April 10, 1995.

Stephen L. Gershner and Gwendolyn D. Hodge, Little Rock, AR, for appellant.

Christopher Heller and John C. Fendley, Jr., Little Rock, AR, for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

WOLLMAN, Circuit Judge.

This is a contract case arising from a franchise agreement for frozen yogurt stores between franchisor TCBY Systems, Inc. and franchisee JRT, Inc., the plaintiff below. JRT appeals from the district court's [1] judgment dismissing or granting summary judgment on all counts of JRT's complaint. We affirm.

### I

The first of several franchise agreements between the parties was executed in April 1986. By January 1987, the first store was completed and opened. By February 1990, JRT was operating six TCBY stores in the Grand Rapids, Michigan, area. (Until May 31, 1988, JRT had exclusive rights to operate TCBY stores in the Grand Rapids area.) The business was unprofitable, and JRT filed for bankruptcy in August 1990.

In a nine-count complaint described more fully below, JRT in essence alleged that TCBY either breached the express terms of the agreements or otherwise illegally interfered with JRT's business. TCBY moved for

---

1. The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

summary judgment. TCBY's key theory was that it had made out a prima facie case for summary judgment on the main counts, thereby shifting the burden to JRT to "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The district court issued an unpublished memorandum and order on July 7, 1994, in which TCBY prevailed on all counts.

## II

■ The district court dismissed Count VII of JRT's complaint and a portion of Count III. The pertinent part of Count III alleged violations of the Arkansas Franchise Practices Act. ARK.CODE ANN. §§ 4–72–201 to 210 (Michie 1991). Citing ARK.CODE ANN. § 4–72–203, the district court found that the Act only applies if the franchisee is required to do business in Arkansas.[2] We agree. Because the franchise agreements contemplated yogurt stores in Michigan only, the district court correctly dismissed this part of Count III.

JRT's Count VII is founded on the Arkansas Deceptive Trade Practices Act, ARK.CODE ANN. § 4–88–101 to 207 (Michie 1991 & Supp. 1993). The dismissal was based on the district court's understanding that JRT had decided not to press this ground. JRT does not dispute this, and so we uphold the dismissal of Count VII.

## III

The district court granted summary judgment for TCBY on JRT's seven remaining counts and the undismissed portion of Count III. The main thrust of JRT's complaint is that TCBY either did not help JRT enough during this contract or otherwise took advantage of JRT during contract performance. Generally speaking, JRT's complaint is not that TCBY breached express contract provisions; rather, the four key counts of JRT's complaint are premised on the argument that TCBY acted in bad faith, or at the least did not demonstrate a good faith performance. These four counts sound in breach of contract, fraud, negligence, and the implied covenant of good faith and fair dealing. In addition to relying on similar accusations of TCBY's bad faith, the specific allegations of these counts are in large part indistinguishable.

Accordingly, our determination that JRT failed to carry its burden of showing the potential to prove at trial that TCBY acted in bad faith with respect to the Count I breach of contract claims also applies to three other counts.

### a. Breach of Contract.

■ To succeed on a claim that a franchisor has breached a contract by violating an obligation to deal in good faith, a franchisee must show the franchisor "was not honest in fact and acted with bad motive." *TCBY Systems, Inc. v. RSP Co.*, 33 F.3d 925, 928 (8th Cir.1994). In *RSP*, we found bad motive when the franchisor disregarded its own well-documented demographic guidelines by approving a franchisee-selected yogurt store site falling "woefully short" of these guidelines. *Id.* By contrast, in this case a review of JRT's argument with respect to its seven specific breach of contract claims in Count I shows that JRT has pointed to no such objectively ascertainable showing of intentional bad faith.

■ In its first breach of contract argument, JRT claims that TCBY had an obligation to give JRT reasonable assistance in site selection. While *RSP* indicates that such a site selection obligation does exist, *RSP* also holds that evidence of actual bad motive, such as disregarding company site selection guidelines, is required before this obligation is breached. *Id.*

Here, TCBY's summary judgment motion made a prima facie case that no site selection obligation was breached: TCBY 1) asserts the absence of any indication of *RSP*-style bad faith; and 2) points to contract language establishing that TCBY normally has no affirmative site selection duties under the contract. The contract documents cited do indi-

---

2. "This subchapter [the Arkansas Franchise Practices Act] applies only to a franchise ... which contemplates or requires the franchise to establish or maintain a place of business within the State of Arkansas." ARK.CODE ANN. § 4–72–203 (Michie 1991).

cate that in most situations TCBY's site se-lection role is limited to approval of JRT's selections. TCBY assumes primary site se-lection duties only when asked to do so in writing. TCBY has pointed to evidence that this exception was never in play here since JRT consistently selected its own sites.

Because TCBY made a prima facie show-ing that it had no affirmative site selection duties and persuasively demonstrated the ab-sence of evidence of bad faith, JRT was obliged to raise a dispute either as to TCBY's bad faith or as to whether TCBY's affirma-tive site selection duties were triggered. *See Celotex v. Catrett*, 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

■ JRT reiterates the allegation that, as in *RSP*, a TCBY real estate advisor who evaluated some of JRT's allegedly inferior sites was not versed in site selection. We assume for purposes of discussion that this would amount to a breach of contract. The only evidence of the advisor's inexperience, however, is proffered in the affidavit of Tim Nickodemus, an officer of JRT, which states: "After [TCBY's real estate advisor] approved our location, we discovered that TCBY had removed him from the real estate depart-ment because he had recommended so many bad locations to other franchisees." This assertion, however, amounts to no more than a reiteration of JRT's pleadings. Where the moving party has advanced a prima facie case, a successful summary judgment de-fense requires more than argument or re-allegation; JRT must demonstrate that at trial it may be able to put on admissible evidence proving its allegations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Nickodemus's apparent-ly hearsay-based affidavit, with no hint as to the source of his belief regarding the advis-or's experience, gives no such assurance.

■ In its second breach of contract claim, JRT argues that TCBY forced JRT to locate stores at poor sites and to locate stores less than three miles apart, contrary to internal TCBY guidelines. Once again, however, JRT offers no objective evidence that its sites in fact were inferior, nor does JRT bring forward any indication outside of hear-say reported in the Nickodemus affidavit that TCBY even has a three-mile limit; indeed, at oral argument JRT's counsel cited only the Nickodemus affidavit when asked where this three-mile rule could be found in the record. JRT must prove at trial not that Nickodemus thought that TCBY had a three-mile internal guideline, but rather that one truly existed and was disregarded. *See RSP*, 33 F.3d at 928 (franchisee showed that TCBY approved site knowing it fell short of internal guide-line). Here, JRT has failed to bring forth evidence that the stores were poorly sited or evidence that TCBY had a three-mile guide-line.

■ JRT's third breach of contract claim is that TCBY located a non-JRT store within JRT's Grand Rapids exclusive development area. Although JRT concedes that its writ-ten exclusive area development contract had expired by the time of the offending store's opening, JRT argued to the district court that the exclusive was extended by oral agreement. Once again, JRT has pointed to absolutely no evidence in the record support-ing such an allegation.

■ JRT's fourth breach of contract claim is that TCBY failed to advertise adequately as promised in the franchise agreements. JRT fails, however, to point to any evidence showing that TCBY's ad campaign was inad-equate. For example, JRT alleges in part that TCBY's ad campaign was targeted to-ward women only. But we are presented with absolutely no evidence that any ad cam-paign did or did not take place. Nor has JRT told us how it expects to prove its allegation of a female-oriented ad strategy, much less come forward with evidence that such a strategy would be inadequate to sell yogurt.

■ For its fifth breach of contract claim, JRT alleges that TCBY's subsidiary Ameri-cana Foods, Inc. charged JRT yogurt prices above the industry standard and that the yogurt was inferior. Even if we were to assume that JRT has shown the potential to prove at trial the bad faith the district court held would be necessary to pierce the corpo-rate veil between TCBY and the now-dis-

solved Americana, JRT would fail here. JRT's complaint cites to *Boston Magazine*'s August 1990 rating of TCBY yogurt as the "Worst of Boston." We doubt that this magazine rating alone would represent evidence substantial enough to raise a jury issue on the point of yogurt quality. We will never know, however, as JRT has failed to produce the article or any other evidence going to yogurt quality. We find the record outside the pleadings virtually barren of any potential evidence as to the quality of TCBY yogurt, barren as to TCBY's wholesale yogurt prices, and again barren as to how TCBY's yogurt prices compared to prices in the yogurt industry. Thus, even assuming that JRT's allegations would amount to a breach of contract, JRT has showed neither the potential to prove yogurt inferiority or overpricing at trial nor any excuse for its failure to show such potential.

■ JRT's sixth breach of contract claim is that TCBY would not let JRT sell anything but yogurt products. Even assuming this would have breached the contract, JRT points to no evidence that it was prevented from selling non-yogurt food, nor even that it sought to sell such foodstuffs.

■ In its last breach of contract claim, JRT alleges that TCBY did not give JRT a reasonable chance to succeed. There is no such express term in the contract documents, nor have we found any precedent for an inherent contract right to a reasonable opportunity to succeed. The district court correctly found as a matter of law that there was no such obligation, either express or inherent, in the contract.

In sum, this is a case where the plaintiff defending against a summary judgment motion has failed to make any showing that solid evidence supporting its allegations may be found. Thus, the district court's conclusion that JRT had done nothing in response to summary judgment but reiterate its allegations is correct.

Therefore, either because TCBY is entitled to summary judgment as a matter of law in accordance with the district court's interpretation of the contract, or because JRT has failed to raise a genuine issue controverting TCBY's prima facie case for summary judgment, TCBY is entitled to summary judgment on all the breach of contract claims in Count I of JRT's complaint.

We have dealt exhaustively with JRT's failure to show bad faith in its Count I breach of contract claims because, as noted above, the Count I allegations, and their concomitant charges of bad faith, are echoed in three other counts of JRT's complaint. While our Count I analysis is largely applicable to these other counts, we turn to them briefly.

**b. Implied Covenant of Good Faith and Fair Dealing.**

■ The undismissed portion of Count III, premised on an implied covenant of good faith and fair dealing, restates the claims JRT advanced under its breach of contract theory. Our analysis of JRT's Count I breach of contract claims is applicable here because in Arkansas, bad faith is necessary to JRT's implied covenant theory, just as it was in Count I. *RSP*, 33 F.3d at 928; *Richard Short Oil Co. v. Texaco, Inc.*, 799 F.2d 415, 422 (8th Cir.1986). JRT cannot succeed without demonstrating the potential to bring forth at trial evidence of bad faith. As in Count I, JRT's summary judgment defense is to essentially restate its allegations; as discussed above, this is insufficient.

**c. Negligence.**

■ JRT's Count IV asserts negligence. As with JRT's Counts III discussed immediately above, the specific allegations in Count IV are indistinguishable from those advanced under JRT's breach of contract Count I. Implicit in our analysis of the Count I allegations is the idea that JRT has failed to point to evidence that TCBY's acts or omissions actually damaged JRT; causation and damage are necessary elements of negligence. *Sanders v. Walker*, 298 Ark. 374, 767 S.W.2d 526, 528 (1989). Another basic problem for JRT here is that in Arkansas, a breach of contract is not turned into a tort even if the breach is malicious. *Quinn Cos. v. Herring-Marathon Group, Inc.*, 299 Ark. 431, 773 S.W.2d 94 (1989). Thus, Count IV fails.

**d. Fraud or Misrepresentation.**

 In responding to TCBY's motion for summary judgment on JRT's Count V sounding in fraud, JRT again failed to do any more than reiterate its pleadings; with TCBY having shown an absence of facts supporting JRT's claim of the bad faith required for a finding of fraud—a legal requirement JRT conceded before the district court—the burden was upon JRT to raise a genuine issue regarding TCBY's alleged bad faith. As indicated in our analysis of Count I above, JRT failed to do this.

## IV

 As to JRT's Count II alleging breach of warranty, the district court correctly held that the series of agreements at issue was not predominantly for the sale of goods, but was rather for services and the use of TCBY's trademark. Since the Uniform Commercial Code (as enacted by Arkansas) does not apply outside the sale of goods, TCBY is entitled to summary judgment. *See* Ark.Code Ann. § 4–2–102 (Michie 1991); *Bonebrake v. Cox,* 499 F.2d 951, 960 (8th Cir.1974) (stating that the UCC only applies to contracts predominantly involving the sale of goods).

## V

 In Counts IX and X (JRT's complaint skips Count VIII), JRT argues that certain Michigan, rather than Arkansas, laws should apply. This argument is based on the fact that when TCBY sent its initial franchise documents to JRT officer Nickodemus, TCBY attached a notice required by the Michigan Attorney General's office. (JRT is a Michigan corporation, and its owners and officers are Michigan citizens.) This notice, pursuant to Michigan's Franchise Investment Act, MICH.COMP.LAWS § 445.1527(b) (MICH.STAT.ANN. § 19.854(27)(b) (Callaghan 1993)), forbids the waiver of any FIA-provided franchisee right or protection by voiding contrary franchise agreement provisions.

The agreements between TCBY and JRT provide that Arkansas law governs the franchise relationship "[t]o the extent not inconsistent with applicable law...." *E.g.,* JRT App. 113–14. State anti-waiver statutes like Michigan's will void such choice of law contract clauses only so long as it·is clear the state legislature deliberately targeted choice of law provisions. *See RSP,* 33 F.3d at 930 (Minnesota anti-waiver statute did not override choice of law clause until Minnesota legislature added a clarifying amendment). The Sixth Circuit has stated that Michigan's antiwaiver statute does not specifically target choice of law provisions; thus, in cases involving Michigan franchisees, the parties' choice of law clause can remain valid even under the Michigan anti-waiver rule. *Banek Inc. v. Yogurt Ventures, U.S.A., Inc.,* 6 F.3d 357, 360 (6th Cir.1993) (*Banek* is a direct descendant of *Tele–Save Merch. Co. v. Consumer Distrib. Co.,* 814 F.2d 1120 (6th Cir. 1987); *Tele–Save* was adopted by the Eighth Circuit in *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734 (8th Cir.1989) (en banc).)

 But even after an anti-waiver statute is held not to apply, the forum state's normal conflict of laws rules must be satisfied in order for a choice of law provision to be effective. *Banek,* 6 F.3d at 361. Although the Arkansas Supreme Court has not specifically addressed the choice of law clause situation at hand, the well-accepted basic rule is that the chosen state's law will apply unless 1) another state has a materially greater interest in the issue; and 2) the chosen law would violate a fundamental policy of the state with the greater interest. 1 RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971); *Banek,* 6 F.3d at 361.

 The district court held that Arkansas probably had the greater interest in this case. But even if we assume Michigan has the greater interest, Arkansas law would still control because no fundamental Michigan policy is at stake. JRT's complaint does not attack the franchise agreements themselves as unfair, but rather argues that TCBY performed in bad faith under them. Fundamental state policies involve systemic problems affecting a class of contracts, not specific contract performance problems. *See, e.g., Banek,* 6 F.3d at 362. In trying to establish that Michigan has a fundamental policy at stake, JRT argues that Michigan's consumer

protection or franchise statutes afford protections not available under Arkansas common law. JRT argues that the very existence of such safeguards shows that Michigan has embraced a fundamental policy of protecting franchisees. But JRT misses the vital last step: it gives no example of a Michigan protection or remedy unavailable under Arkansas common law. We are not persuaded that the Michigan statute at issue here is inconsistent with Arkansas law. Where a franchisee cannot show what specific public policy is violated by the choice of law clause, that clause is valid. *See Modern Computer*, 871 F.2d at 740. That is the case here. Arkansas law applies, and so we uphold the district court's grant of summary judgment for TCBY as to Counts IX and X.

## VI

The district court correctly held that since JRT's Count VI claim for additional declaratory and injunctive relief presupposes a breach of the agreements by TCBY, Count VI was mooted.

The judgment is affirmed.