## E. I. DU PONT DE NEMOURS AND COMPANY
### *v.* Tansil DILLAHA d/b/a TANSIL'S BODY SHOP

83-120                                      659 S.W.2d 756

Supreme Court of Arkansas
Opinion delivered October 31, 1983
[Rehearing denied December 5. 1983.]

*Friday, Eldredge & Clark,* by: *Robert V. Light,* for appellant.

*Givens & Buzbee,* by: *Art Givens,* for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellant, E.I. DuPont de Nemours (hereinafter DuPont), appeals from a jury verdict of $40,000 against it for supplying to appellee, Tansil Dillaha, doing business as Tansil's Body Shop, a

defective paint thinner which caused blotchy finishes on cars painted in appellee's shop. The products liability action was submitted to the jury on alternate theories of strict product liability, breach of implied warranty of fitness for a particular purpose, and breach of implied warranty of merchantability. The issue on appeal is whether there was sufficient evidence to support the jury's verdict for appellee.

Dillaha operates an automotive paint and body shop in Sherwood. He consistently used Imron polyurethane enamel and other DuPont products supplied by Hackman Paint Supply Company (hereinafter Hackman). Beginning in June, 1981, cars painted in his shop were returned with millions of tiny bubbles in the finish. Dillaha was forced to paint the cars over numerous times. Both Hackman and DuPont sent representatives to assist in resolving the problem. Recommendations regarding changes in procedure and materials were made and adopted. In October, the representative from DuPont diagnosed the problem as solvent popping, directing Dillaha's attention to a dented-up drum of DuPont paint thinner purchased from Hackman in June. The DuPont representative drew a sample of thinner from this drum but did nothing with it. Dillaha's problems continued until December, 1981, when he returned all salvageable materials purchased from Hackman and obtained supplies from another source. Just before trial, Dillaha had the sample analyzed and compared with several samples of DuPont thinner. The sample from the drum purchased from Hackman did not chemically match any of the DuPont thinners and was indisputably polluted.

Since the jury returned a general verdict, the jury could have found DuPont liable under any one of the three theories submitted to them: strict product liability, Ark. Stat. Ann. § 85-2-318.2 (Supp. 1983); breach of implied warranty of fitness for a particular purpose, Ark. Stat. Ann. § 85-2-315 (Add. 1961); or breach of implied warranty of merchantability, Ark. Stat. Ann. § 85-2-314 (Add. 1961).

In order to recover under the strict product liability theory, the plaintiff must prove 1) that he has sustained damages; 2) that the defendant was engaged in the business

of manufacturing or assembling or selling or leasing or distributing the product; 3) that the product was supplied by the defendant in a defective condition which rendered it unreasonably dangerous; and 4) that the defective condition was a proximate cause of plaintiff's damages. The Product Liability Act of 1979 enacted by the Arkansas General Assembly, while creating no new cause of action, clarified the strict product liability theory by defining terms, establishing a limitations period, and enumerating defenses and indemnification remedies. Ark. Stat. Ann. §§ 34-2801 — 2807 (Supp. 1983).

To recover for breach of an implied warranty of fitness for a particular purpose, the plaintiff must prove 1) that he has sustained damages; 2) that at the time of contracting, the defendant had reason to know the particular purpose for which the product was required; 3) that defendant knew the buyer was relying on defendant's skill or judgment to select or furnish the product; 4) that the product was not fit for the purpose for which it was required; 5) that this unfitness was a proximate cause of plaintiff's damages; and 6) that plaintiff was a person whom defendant would reasonably have expected to use the product.

In recovery for breach of implied warranty of merchantability, the plaintiff must prove 1) that he has sustained damages; 2) that the product sold to him was not merchantable, *i.e.,* fit for the ordinary purpose for which such goods are used; 3) that this unmerchantable condition was a proximate cause of his damages; and 4) that he was a person whom the defendant might reasonably expect to use or be affected by the product.

On appeal, the evidence must be viewed in the light most favorable to the appellee, and the trial court must be affirmed if there is substantial evidence to support the jury's verdict. Substantial evidence is that which is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture. *Jones* v. *State,* 269 Ark. 119, 598 S.W.2d 748 (1980). Unless we determine that the trial court's

decision is clearly erroneous, we will affirm its finding that the jury's verdict was not clearly against the preponderance of the evidence. *Clayton* v. *Wagnon,* 276 Ark. 124, 633 S.W.2d 19 (1982).

The jury's verdict did not specify which one of the theories of liability it based its conclusion on. The record reflects, however, sufficient evidence to support the jury's verdict that the cause of damage to the finish was the use of DuPont paint thinner and that the drum of thinner could not have been contaminated in either Hackman's shop or appellee's shop. Dillaha testified that his problem began when he purchased the thinner in June and continued until December. The DuPont thinner was the only thinner used during this period. Dillaha changed many of his materials and procedures, but none of the changes alleviated the problem. Testimony from the chemist established that the sample drawn from the drum labeled with DuPont's label and purchased from Hackman was undoubtedly contaminated. The owner of Hackman testified there was no way that a DuPont barrel, or anybody's barrel, could have been opened, adulterated, and resealed while it was in his shop. Although there was conflicting evidence, we conclude there was substantial evidence to support the jury's verdict that DuPont was liable for damages caused by its defective product under any one of the three theories of liability.

The jury's verdict found only DuPont, the manufacturer, liable for the defect. A manufacturer's liability to a consumer has been well-established. *MacPherson* v. *Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916); *E.I. DuPont deNemours & Co.* v. *Universal Molded Products Corp.,* 191 Va. 525, 62 S.E.2d 233 (1950); *Sabloff* v. *Yamaha Motor Co.,* 113 N.J. 279, 273 A.2d 606 (1971); see also R. Hursh & H. Bailey, *American Law of Products Liability* § 3:40 (2d ed. 1975). Appellant fails to provide persuasive support for his argument that under the doctrine of *respondeat superior* a verdict in favor of Hackman, the dealer, would exonerate DuPont, the manufacturer.

Neither is there merit in appellant's argument that the trial court erred in excluding as evidence proffered testi-

mony that appellee had used various drugs. Such evidence was irrelevant and was properly excluded under Unif. R. Evid. 402.

Affirmed.