LAKEVIEW COUNTRY CLUB, INC. and Don Parker *v.*
SUPERIOR PRODUCTS and Innovative Coating Products

95-170                                      926 S.W.2d 428

Supreme Court of Arkansas
Opinion delivered July 1, 1996
[Petition for rehearing denied September 9, 1996.]

*Tona M. DeMers,* for appellants.

*James W. Tilley,* for appellees.

DONALD L. CORBIN, Justice. Appellants, Don Parker and Lakeview Country Club, Incorporated, appeal a judgment of the Pulaski County Circuit Court dismissing with prejudice their claims against separate appellees, Superior Products, Innovative Coating Products, and Don Muse, arising from the application of a coating product to appellants' swimming pool. Appellants raise two points for reversal of the judgment. The court of appeals certified this case to us as one involving a question about the law of torts. Ark. Sup. Ct. R. 1-2(a)(16), and (d)(1). We find no merit to the appeal and affirm.

The judgment from which appellants appeal states that after appellants had rested their case as plaintiffs, the trial court granted motions for directed verdicts to separate appellees, Superior Products, the alleged manufacturer of the coating product at issue, and Innovative Coating Products, the alleged supplier of the coating product. The judgment also states that appellants' cause of action against appellee Don Muse was then submitted to the jury, which returned a verdict for Muse.

Appellants' entire case at trial consisted of only two witnesses: Appellant Don Parker, lessee-owner and manager of appellant Lakeview Country Club, and Stephen G. Littleton, a member of Lakeview Country Club who repaired the pump on the swimming pool. After the trial court granted the directed verdicts, appellee Muse did not present any evidence. Thus, Parker and Littleton were the only witnesses in this case. We relate their testimonies in detail to illustrate the total failure of proof in this case.

Appellant Parker testified to the following. He leased appellant Lakeview Country Club in July 1991 and later became the current owner of the club. His intention to repair the swimming pool became known to appellee Muse. Appellee Muse was a country club member who told Parker that he "had the best product in the world" to coat the pool with, that the product had been used on space shuttles, and that the product could be used on the deck

around the pool because it would not get hot from the sun. Appellee Muse supplied the coating product to appellants. Appellants paid appellee Muse $4,603.75 for the product, and appellee Muse supervised other members of the club who applied the coating.

According to appellant Parker, the following facts occurred after the coating was applied. The pool sat empty for two or three weeks, then the coating began to crack and peel. Appellee Muse went to Kansas City to obtain additional product and applied it to the pool. After the pool was filled with water, the coating again cracked and peeled. Some of the persons who swam in the pool cut their feet on the broken patches. Use of the pool by members declined. Appellant Parker talked with J.E. Pritchett of Superior Products in Kansas. Pritchett sent some people to examine and test the chips. Pritchett then told appellant Parker that the reason the coating chipped was because the pool had previously been coated with a latex base and his product would not stick to a latex base. There was no warning or instruction on the label of the container concerning the fact that the product would not adhere to a latex base. Likewise, there were no instructions provided by appellee Muse stating not to apply the product over latex paint. No one from Superior Products or Innovative Coating Products, including appellee Muse, informed appellants that the coating should not be applied over a latex paint, nor did anyone inquire as to what had been previously applied to the pool. Appellee Mr. Muse portrayed himself as an expert and professional in this field. After the coating chipped, membership dues decreased by $3,000.00 per month.

Mr. Littleton testified that the company he worked for made repairs totaling $308.59 to the pump. He stated that the repairs were needed because pieces of the chipped coating had become lodged in the pump, which prevented the pump from creating a vacuum to pull the water through the filter. Mr. Littleton informed appellants that the problem with the pump would be ongoing as long as there was foreign material in the water coming through the filter system. Mr. Littleton also stated that, as a club member, he did not want his family swimming in the pool because he was concerned about them getting cut.

At the close of appellants' case, appellee Superior Products moved for directed verdict on the bases that appellants had not proven that the product was defective, that the product was rendered unreasonably unsafe because of a defect, and that any defect

was the proximate cause of their injuries. The trial court granted the motion, stating that there was no evidence that appellee Mr. Muse represented appellee Superior Products, that appellee Superior Products was the manufacturer of the coating product, and that the product was defective. In short, the trial court stated, "I see just a complete lack of evidence to support the claim against Superior and I will direct a verdict for Superior[.]" As to the other appellees, Muse and Innovative Coating Products, the trial court stated it would not direct a verdict for appellee Muse. However, because the trial court found that there was no proof of any connection between Muse and Innovative Coating Products, it directed a verdict for appellee Innovative Coating Products. This appeal is from the direction of these two verdicts, the essence of the appeal being that the entire case should have been submitted to the jury.

■ In reviewing an order granting a motion for directed verdict, we view the evidence most favorably to the party against whom the verdict was directed. *Higgins* v. *General Motors Corp.*, 287 Ark. 390, 699 S.W.2d 741 (1985). If any substantial evidence exists that tends to establish an issue in favor of that party, it is error for the trial court to direct a verdict and take the case from the jury. *Id.*

## I. SUPERIOR PRODUCTS

Appellants' first argument for reversal of the judgment is that the trial court erred in directing a verdict for Superior Products on the claims of strict liability, breach of the implied warranty of merchantability, and breach of the duties to instruct and warn. We consider each claim separately.

### A. STRICT LIABILITY

Appellants argue their claims for strict liability should have been submitted to the jury because they proved Superior Products was the manufacturer by way of a photograph showing a container of the product bearing a label with the name "Superior Products International II." This photograph was admitted during appellant Parker's testimony, wherein he identified the container as the one containing the product used on his pool. The label on the container states in its entirety:

Superior Products
International II

Product:

#ME-0508 Light Blue
TOTAL-SEAL
Semi-Gloss Epoxy Coating
*BASE

WARNING!
FLAMMABLE LIQUID!
Contains Ketone, and Aromatic Solvents

Manufactured for Superior Products Intl. II
Salinas, KS          Batch #051492

*Mix Ratio (by Volume):*
1 part #913/53 *CURING AGENT
4 parts #ME-0508          *BASE

Induction Period: 15 minutes
´Pot Life: 8+ hours @ 75 F

Appellants also rely on that portion of appellant Parker's testimony relating his conversations with Pritchett concerning Pritchett's explanation for the reason the coating chipped. Finally, appellants rely on appellant Parker's testimony that some of the persons who swam in the pool cut their feet on the chips and on Littleton's testimony that the repairs to the pump were required because pieces of the coating product had lodged in the pump.

Appellants' arguments with respect to strict liability are wholly without merit. Granted, the evidence relied on by appellants establishes that the product did not adhere to the pool because it was applied over a latex base and that it caused injury to some people's feet. However, this is not evidence that the product was defective. As appellees point out, if this evidence proves anything, it proves only that the product was misused.

Proof that the product was defective is an essential element of a cause of action based on strict liability. Ark. Code Ann. § 4-86-102(a)(2) (Repl. 1966); *Higgins*, 287 Ark. 390, 699 S.W.2d 741. However, proof of a specific defect is not required when common experience teaches that the accident or damage would not have occurred in the absence of a defect. *Id.* Here, we cannot say

that the coating would not have chipped in the absence of a defect because, as the trial court stated, "there [could] be fifty reasons why paint peels[.]" A couple of reasons that come to mind are misuse and improper application. Thus, proof of a defect was required in this case.

Given the absence of any proof that the product was defective, we cannot say the trial court erred in directing a verdict for appellee Superior Products on the strict liability claim. Further, given the absence of proof of defect, we need not determine whether the remaining elements of liability were established.

## B. IMPLIED WARRANTY OF MERCHANTABILITY

To sustain a claim for breach of warranty of merchantability, a plaintiff must prove that he sustained damages, that the product was not fit for its ordinary purpose, that the unfitness was the proximate cause of his damages, and that he is someone reasonably expected to use the product. *E.I. DuPont de Nemours and Co.* v. *Dillaha*, 280 Ark. 477, 659 S.W.2d 756 (1983). We dispose of this argument summarily because there was absolutely no proof whatsoever of the ordinary purpose of this product. On the record before us, we cannot determine whether the purpose of the product was for swimming pools or space shuttles. Moreover, appellants do not even allege what they claim the ordinary purpose of this product to be. Without this proof, we simply cannot determine whether there was any breach of the warranty of merchantability.

Even assuming, as appellees state in their brief, that the ordinary purpose of this product was to coat swimming pools, there was no proof that the product was not fit for that purpose. Again, there was only proof that the product cracked and peeled from appellants' swimming pool which may indicate a problem with the product's application. Thus, we cannot say the trial court erred in directing a verdict for Superior Products.

## C. DUTIES TO WARN AND INSTRUCT

Essentially, appellants contend this product should have been accompanied by some warning or instruction not to apply it over chlorinated rubber or latex paint. Appellants merely allege that the duties to warn or instruct existed in this case. They do not cite any authority to support this allegation, nor do they cite authority

stating under what facts and circumstances these duties arise. We will not do appellants' research for them. *Forrest* v. *Ford*, 324 Ark. 27, 918 S.W.2d 162 (1996). The question of what duty is owed is always a question of law. *First Commercial Trust Co.* v. *Lorcin Eng'g, Inc.*, 321 Ark. 210, 900 S.W.2d 202 (1995). In this case, the trial court never determined that appellees owed appellants a duty to warn or instruct. Thus, there is no ruling for us to review even if we had been cited to applicable law.

Appellants do cite authority for the proposition that the *adequacy* of a warning label is generally a question for the jury, *Bushong* v. *Garman Co.*, 311 Ark. 228, 843 S.W.2d 807 (1992). However, according to appellant Parker's testimony, there were no warnings or instructions that accompanied this product. Thus, there were no labels or instructions for the jury to determine the adequacy of, and appellants' reliance on *Bushong* is misplaced.

■ We conclude there was no substantial evidence tending to establish an issue in favor of appellants. Accordingly, we affirm the judgment directing a verdict for appellee Superior Products.

## II. INNOVATIVE COATING PRODUCTS

Appellants' second argument for reversal is that the trial court erred in directing a verdict for appellee Innovative Coating Products on their claims of strict liability, breach of warranty of fitness for a particular purpose, and breach of warranty of merchantability. The trial court directed the verdict for appellee Innovative Coating Products because appellants did not offer any evidence that appellee Muse owned appellee Innovative Coating Products or that Muse's conduct was imputed to Innovative Coating Products. In defense of the motion, appellants stated that Muse admitted ownership of Innovative Coating Products in the answer he filed on behalf of both himself and Innovative Coating Products. The trial court stated that such an admission could not be considered as evidence.

■ While we are sympathetic to the essence of appellants' argument, which is that an admission by a party in an answer need not be proven by other evidence in order to create a fact question, *see, e.g., Twin City Corp.* v. *Riggins*, 278 Ark. 411, 646 S.W.2d 10 (1983), we cannot conclude the trial court erred in this respect because the abstract does not indicate that Muse made such an admission in his answer. It is well established that our review on appeal is limited to the record as abstracted in the briefs, not upon

one transcript, because there are seven judges involved in our decision. *Kearney v. Committee on Professional Conduct*, 320 Ark. 581, 897 S.W.2d 573 (1995). On this record as abstracted, there is no evidence of any connection between Muse and appellee Innovative Coating Products. In addition, this record as abstracted does not establish that Innovative Coating Products was the supplier of the product at issue. Thus, we cannot conclude the trial court erred in directing a verdict for appellee Innovative Coating Products.

■ Given the lack of proof concerning the involvement of appellee Innovative Coating Products in this case, we would only be speculating if we attempted to review appellants' claims of strict liability, breach of warranty of merchantability, and breach of warranty of fitness for a particular purpose. We will not so speculate. Therefore, we cannot conclude the trial court erred in directing a verdict for appellee Innovative Coating Products.

In summary, appellants failed to prove their case, and the trial court did not err in directing verdicts for Superior Products and Innovative Coating Products. Appellants do not challenge the jury's verdict in favor of appellee Muse. Accordingly, the judgment is affirmed.

DUDLEY, J., not participating.