Danny DAY, Sr., Danny's Farm, Inc., Raymond Day, Day & Sons and Percy Morris, Plaintiffs,

v.

TRI–STATE DELTA CHEMICALS, INC., d/b/a UAP Mid–South, Defendant.

No. 5:00CV00119–WRW.

United States District Court, E.D. Arkansas, Pine Bluff Division.

Aug. 24, 2001.

Charles S. Gibson, Gibson Law Office, Dermott, AR, for Danny Day, Sr, Danny's Farm Inc., Raymond Day & Sons, Percy Morris, plaintiffs.

Don A. Eilbott, Eilbott Law Firm, Pine Bluff, AR, Leslie Ross Higman, Wyatt, Tarrant & Combs, LLP, Memphis, TN, F. Wilson Bynum, Jr., Attorney at Law, Pine Bluff, AR, for Tri–State Delta Chemicals, Inc. dba UAP Mid–South, defendants.

## *ORDER GRANTING SUMMARY JUDGMENT AND DISMISSING THE CASE WITH PREJUDICE*

WILSON, District Judge.

Pending is defendant's Motion for Summary Judgment (Doc. 29). Plaintiffs have responded (Doc. 46), and the defendant has replied (Doc. 54). For the reasons set forth below, the motion is GRANTED.

### Background

The plaintiffs, Danny Day, Sr., Danny's Farm, Inc., Raymond Day & Sons, and Percy Morris, farm cotton in Desha and Drew County, Arkansas. They have been purchasing seed and other farm related materials from the defendant, UAP Mid–South, for years. During 1999 alone, plaintiffs purchased about $400,000 worth of goods and services from the defendant.

The subject of this lawsuit is NuCotn 33B cotton seed that was purchased on credit from the defendant in 1999. Plaintiffs allege that the seed was old and, as a result, it lacked the vigor to grow properly. They further contend that they suffered damages when the seed did not yield the amount of cotton it should have.

It is undisputed that the defendant ordered the plaintiffs' seed from Delta and Pine Land Company ("DPL"). DPL produced the seed, bagged and labeled it, and then, after receiving the order for NuCotn 33B seed from the defendant, selected the seed that was eventually planted by the plaintiffs.

Each bag of NuCotn 33B has a label which contains an encrypted "lot number code." If a person knows how to read and understand that code, that person can then tell you the seed's age. Plaintiffs argue that defendant's employees either knew, or should have known, the age of seed, but did not tell the plaintiffs. Defendant, in turn, argues that: 1) none of its employees who dealt with the plaintiffs knew how to read DPL's lot code number; 2) none of its employees knew the age of the seed at the time it was sold to plaintiffs; 3) none of its employees knew the plaintiffs were relying upon their skill and judgment to select and furnish seed that was a particular age; 4) its employees were not under a duty to tell the plaintiffs the age of the seed even if they would have known; and 5) its employees were not required to independently test the vigor of the seed before selling it to the plaintiffs.

Plaintiff filed this action on April 6, 2000, alleging breach of implied warranty of fitness for a particular purpose, actual and constructive fraud, and breach of fiduciary duty. Defendant has filed a motion for summary judgment on all claims.

### Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material

fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.1987); Fed.R.Civ.P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial on disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir.1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. MK–Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir.1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

### Actual Fraud/Constructive Fraud

The essential elements of an action for fraud are: (1) the defendant made a false representation of material fact; (2) the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) the defendant intended to induce the plaintiff to act or refrain from acting in reliance upon representation; (4) the plaintiffs justifiably relied on defendant's false representation; and (5) plaintiffs suffered damage as a result of that reliance.[1]

■ To establish constructive fraud, the plaintiffs must show: (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance.[2] Constructive frauds can exist in cases of rescission of contracts or deeds or breaches of fiduciary duties, but the party alleging constructive fraud must show a material misrepresentation of fact.[3]

---

1. *Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579, 586 (1999).

2. *Farm Bureau Policy Holders and Members v. Farm Bureau Mutual Insurance Company of Arkansas, Inc.*, 335 Ark. 285, 984 S.W.2d 6, 14 (1998).

3. *See Scollard v. Scollard*, 329 Ark. 83, 947 S.W.2d 345 (1997).

■ Plaintiffs' complaint does not allege that the defendant made an affirmative misrepresentation, but instead alleges the defendant made a material misrepresentation by silence, i.e., that the defendants knew or should have known the age of the seed, but did not report that information to the plaintiffs. The following paragraph explains the difference between mere silence and fraud by silence:

The law distinguishes between passive concealment and active concealment, or in other words, between mere silence and the suppression or concealment of a fact, the difference consisting in the fact that concealment implies a purpose or design, while the simple failure to disclose a fact does not. *Mere silence is not representation, and a mere failure to volunteer information does not constitute fraud. Thus, as a general rule, to constitute fraud by concealment or suppression of the truth there must be something more than mere silence or a mere failure to disclose known facts. Where there is no obligation to speak, silence cannot be termed "suppression," and therefore is not a fraud.* Either party may, therefore, be innocently silent as to matters upon which each may openly exercise his judgment.

*Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other contracting party,* whether the duty arises from a relation of trust, from confidence, for inequality of condition and knowledge, or other attendant circumstances.[4]

Stated differently, plaintiffs must show not only that the defendant's employees knew the defect of the seed, but must also show that there was an *obligation* to inform the plaintiffs of that information.

■ Plaintiffs have attempted to generate a material fact question by arguing that, even if the defendant's employees did not know how old the seed was, they should have known about the seed's defect—its poor vigor.[5] However, there is no evidence in the record before me that defendant tested the seed to check its vigor. More importantly, there was apparently no duty on the defendant, as a retail seller of the product, to test the seed for non-obvious defects (like the vigor of a seed). That duty belonged to DPL—the company that produced, tested, bagged and labeled the seed that ended up in the plaintiffs' fields.[6]

Second, plaintiffs have not come forward with admissible affidavits or deposition testimony to establish that the defendant's employees knew how to read the lot number codes. Plaintiffs have offered the affidavit of Marvin Glover which contained several opinions about what the defendant

**4.** *See Farm Bureau,* 984 S.W.2d at 14 (Ark. 1998) (quoting 37 AM. JUR.2d *Fraud and Deceit* § 145) (emphasis added)

**5.** For example, plaintiffs have offered a "UAP Website Brochure" in an effort to show that defendant advertises itself to be a large company with a superior knowledge about agriculture and customer needs. Plaintiffs did not see this brochure or rely upon it before purchasing their cotton, but it is apparently offered as evidence that defendant, as company with superior knowledge, should have known how to determine the age of the seed.

**6.** *See e.g.* Ark.Code Ann. §§ 2–18–101—111 (placing the burden of testing and labeling on the manufacturers, not the retailers); AMI Civil 4th, 1006 ("Ordinarily a seller does not have a duty to inspect a product for possible defects." It is only when a seller "has reason to believe that the product is defective or is likely to have a defect which would make it dangerous" that a seller has a duty to make a reasonable inspection of the product.)

should have known, and the duties defendant owed to its customers. Mr. Glover has not been disclosed as an expert, and the opinions in his affidavit are not the type of lay opinions that would be admissible under Rule 701 of the Federal Rules of Civil Procedure. Be that as it may, even though his affidavit states that he knew how to read DPL's lot number codes, his deposition testimony reveals that he does not know if the defendant's employees knew how to read them. That testimony also revealed that he has no information of any sort, that the defendant knew the cotton seed was old before they sold it to the plaintiffs.[7]

Third, assuming that the defendant's sales people knew how to read the codes, and further assuming that they bothered to check the labels to determine the seed's age, there is no evidence in the record that defendant's employees *intentionally remained silent* about the age of the seed while trying to *induce* the plaintiffs to buy old NuCotn 33B seed. In fact, it appears that the plaintiffs made the choice of seed without any assistance of the defendant's employees. Plaintiff's response to the motion for summary judgment states: "Plaintiffs chose the *variety* they wished to plant, they didn't choose or specify *seed age* within the variety."[8] That quote is revealing because it is undisputed that DPL selected the seed (and its age)—not the defendant.

Fourth, even if the defendant's employees knew the age of the cotton seed yet remained silent, plaintiffs have not established that the defendants had a duty to communicate that information to its customers. Plaintiffs have not produced, nor has my research revealed, any case, statute, or treatise authority that indicates the defendant had a legal duty to communicate the seed's age to its customers. Additionally, plaintiffs have not cited me to any industry standards that create any such duty.[9] Questions of what duties, if any, owed by one person to another are questions of law.[10] Even if the defendant's employees had known the age of the seed (which did not *necessarily* mean the seed was going to be vigor deficient), I find that the defendant did not owe a duty to disclose the age of the seed to the plaintiffs.

## FIDUCIARY DUTY TO REPORT THE AGE OF THE SEED

█ Plaintiffs also argue that they trusted and relied upon the defendant, and that defendant owed a fiduciary duty to tell the plaintiffs about the age of the seed. For a fiduciary relationship to exist, the Arkansas Supreme Court has emphasized the necessity of factual underpinnings to establish a relationship of trust between a seller and its customers that goes beyond the standard buyer-seller relationship.[11] As discussed above, aside from allegations and speculation about what the defendant should have known, plaintiffs failed to offer admissible evidence showing the defendant's employees knew the age of the seed. Second, the record before me does not suggest that the plaintiffs looked to the defendant's employees for advice about the seed. In fact, it appears that plaintiffs knew precisely what kind of seed they

---

7. *See* Doc. 54 pg. 13–14

8. *See* Doc. 47 (emphasis in original)

9. Plaintiffs do state, without citation, that "It is industry norm that seed suppliers should know and inform farmers of material facts affecting seed quality." *See* Doc. 48, pg. 4.

10. *See Maneth v. Tucker,* 72 Ark.App. 141, 34 S.W.3d 755 (2000)

11. *See Mans v. Peoples Bank,* 340 Ark. 518, 10 S.W.3d 885 (2000)

wanted before ever talking to the defendant's employees.[12] And third, it appears that the parties had nothing more than a buyer-seller relationship. Because the parties were clearly dealing at arms-length, there was no fiduciary duty to disclose the seed's age (even assuming that the defendant's employees knew how old the seed was).[13] Simply put, as the mere seller of a product, defendant did not assume the position of plaintiffs' agent or fiduciary.

Plaintiffs also suggest that they had an inequality of knowledge about the seed's age, and that inequity created a duty to disclose. This suggestion is not supported by the facts. First, plaintiffs have been in the cotton farming industry for many years, and they spend vast amounts of money on seed and other products every year. This is clearly not the situation where a crafty sales person was dealing with people who had no knowledge about the product being sold. It could be argued that the plaintiffs knew more about cotton than the defendant's employees.

## IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

■ To recover for breach of an implied warranty of fitness for a particular purpose, the plaintiffs must prove: 1) that they sustained damages; 2) that at the time of contracting, the defendant had reason to know the particular purpose for which the product was required; 3) that defendant knew the plaintiffs were relying on defendant's skill or judgment to select

or furnish the product; 4) that the product was not fit for the purpose for which it was required; 5) that this unfitness was a proximate cause of plaintiffs' damages; and 6) that plaintiffs were persons whom defendant would reasonably have expected to use the product.[14]

■ Plaintiffs allege that defendant breached an implied warranty of fitness for a particular purpose, but fail to establish that the defendant *knew* the plaintiffs were relying upon the skill and judgment when selecting and furnishing the seed. As discussed above, defendant neither selected the type of seed or the age of the seed.

More importantly, plaintiffs purchased the cotton seed from the defendant on credit. In doing so, they signed a document entitled "Debtor Information, Credit Application, and Credit Agreement." On the reverse side of that document is a section entitled: "Conditions of Sale—Limited Warranty and Limitation of Liability and Remedies." This section states in pertinent part:

D. LIMITATION OF WARRANTY, LIABILITY, AND REMEDIES

TRI–STATE MAKES NO OTHER WARRANTY OR REPRESENTATION OF ANY KIND, EXPRESS OR IMPLIED, CONCERNING THE ABOVE GOODS, INCLUDING NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS OF THE GOODS FOR ANY PARTICULAR PURPOSE, AND NO SUCH

---

**12.** "He wouldn't have had no reason to give me any written materials because he didn't—I mean, I told him what I wanted. He didn't tell me what I wanted—he wanted me to plant. I told him what I wanted from him. And he didn't have no reason to give me anything written on anything." Deposition of Danny Day Sr., October 30, 2000 (page 25)

**13.** *See Metropolitan Fed. Bank v. W.R. Grace & Co.,* 999 F.2d 1257, 1261 (8th Cir.1993)

**14.** *See E.I. Du Pont de Nemours & Co. v. Dillaha,* 280 Ark. 477, 659 S.W.2d 756, 757–758 (1983)

WARRANTIES SHALL BE IMPLIED BY LAW. (Caps in Original)

This exclusion section eliminated all implied warranties of fitness under Arkansas Code Annotated § 4–2–316(2), which states in pertinent part:

> to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of writing must be conspicuous, and *to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.* Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof." (emphasis added)

Whether a writing is conspicuous is a matter for the court to decide.[15] An exclusion clause is considered to be conspicuous "when so written that a reasonable person against whom it is to operate ought to have noticed it ... Language in the body of a form is 'conspicuous' if it is in larger or contrasting type or color."[16] I find the language in the credit agreements to be adequately conspicuous to eliminate all implied warranties of fitness.

Plaintiffs contend that they should not be bound by the disclaimers on the back of the credit agreements because they did not see the disclaimer and did not know it was incorporated into the document. However, under Arkansas law, persons are considered to know the contents of documents they sign, regardless of whether they actually read those documents.[17] This is espe-cially true for plaintiffs who have extensive business experience, commonly made purchases on credit, and had an intimate knowledge of the cotton industry. Even if plaintiffs were not bound by the disclaimers found in the credit agreements, each bag of cotton seed also had a warranty disclaimer.[18]

### Conclusion

Defendant's motion for summary judgment is GRANTED. All other pending motions are DENIED as moot.

---

15. *Hunter v. Texas Instruments, Inc.,* 798 F.2d 299, 302 (8th Cir.1986)

16. *Id.* (quoting Ark.Stat.Ann. § 85–1–201(10) (1961 & Supp.1985))

17. *See Warford v. State Farm Mut. Auto. Ins. Co.,* 871 F.Supp. 1085, 1090 (W.D.Ark.1994).

18. Each bag contained a "NOTICE TO BUYER" which stated: "WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY DISCLAIMED." *See* Doc. 30 pg. 7.