UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 25, 2004
Decided June 6, 2005

*Before*

**Hon.**  RICHARD A. POSNER, *Circuit Judge*

**Hon.**  MICHAEL S. KANNE, *Circuit Judge*

**Hon.**  ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| No. 04-1611 | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| In re BRIDGESTONE / FIRESTONE INCORPORATED, TIRES PRODUCT LIABILITY LITIGATION. | |
| | No. 01 C 5307 |
| | Sarah Evans Barker, *Judge.* |

**O R D E R**

Valerie Jett was injured in an automobile accident while driving her Ford Explorer.  She later sued Bridgestone/Firestone ("Firestone"), alleging that the tread on one of her Explorer's Firestone tires separated and caused the accident.  The allegedly defective tire was not preserved, however, and no expert ever examined the tire.  The district court granted Firestone's motion for summary judgment, reasoning that Jett had not presented sufficient evidence from which a jury could conclude that a defect in the tire caused Jett's accident.  For the reasons that follow, we agree and affirm.

## I.  Background

Valerie Jett purchased a new Ford Explorer in October 1997 that came equipped with Firestone Wilderness AT tires.  On March 26, 1998, while driving

her Explorer on a state highway in Arkansas, Jett heard a "tapping" noise emanating from the rear tire on the passenger side of her vehicle. According to Jett, it then "went out of control, the Ford Explorer began to spin, and [she] woke up in the hospital."

After the accident, Jett went to a salvage yard and saw her vehicle, where she observed that the tread had separated from the body of the tire on the rear passenger tire. The separated tread was underneath the vehicle, however, and she could not recover the damaged tire. Later, her Explorer was sold to a second salvage yard. When she visited the second salvage yard, she was told her vehicle had been sold and no longer belonged to her.

Approximately two years later, Jett learned from newspaper and television reports that some Firestone Wilderness AT tires had experienced tread separation problems. She stated in an affidavit that had she known in March 1998 about these problems, "I would have made sure that I could have recovered the tire." Firestone later recalled certain of its Wilderness AT tires that had been provided with Ford Explorers. By the time Jett learned of the recall, she could not locate her vehicle, and the allegedly defective tire was not preserved. Jett filed this products liability action against Firestone in federal court in Arkansas alleging strict liability, negligence, and breach of an implied warranty of merchantability.[1] This case was then transferred to the United States District Court for the Southern District of Indiana, where similar cases had been consolidated under an order of the Judicial Panel on Multidistrict Litigation. *See* 28 U.S.C. § 1407.

Firestone filed a motion for summary judgment, arguing that Jett had not provided sufficient evidence that any defect in the tire caused her accident. Along with her June 27, 2002 response to Firestone's motion for summary judgment, Jett attached as exhibits an affidavit from Kenneth Pearl dated June 3, 2002, which had as an exhibit Pearl's "Firestone Tire Report" dated January 30, 2002;[2] portions of the deposition testimony of Vivian Brown and Kenneth Brown; and her own affidavits dated April 24, 2002 and May 20, 2002. (R. 11.) On October 31, 2002, Jett filed a supplemental affidavit, as well as a supplemental affidavit from Pearl. Firestone filed a motion to strike these supplemental affidavits. The district court granted Firestone's motion for summary judgment, and, in light of this ruling, did not rule on Firestone's motions to strike these affidavits and other materials.

## II. Analysis

---

[1]Jett also sued Ford, but Ford is not a party to this appeal.

[2]The undated "Report of Kenneth L. Pearl," a different document that appears in the record as an exhibit to a brief in support of a Firestone motion to strike, was not submitted with Jett's response to Firestone's motion for summary judgment.

Firestone maintains the district court properly granted summary judgment in its favor because, it argues, Jett has not sufficiently shown that any defect in a Firestone tire was a proximate cause of her injury. Firestone also contends that Jett relies on documents that either are not in the record or are not properly in the record. We will begin by reviewing the district court's grant of summary judgment under the assumption that all the documents on which Jett relies are properly in the record.

We review a district court's grant of summary judgment de novo. *Davis v. G.N. Mortg. Co.*, 396 F.3d 869, 877 (7th Cir. 2005). In a case such as this one where our jurisdiction is premised on diversity, summary judgment should be granted when there is "no genuine issue as to any material fact," Fed. R. Civ. P. 56(c), and "the non-moving party lacks enough evidence to sustain a jury verdict according to the federal standard: whether reasonable minds could deem the evidence adequate under the governing [state] substantive rule." *Knoblauch v. DEF Exp. Corp.*, 86 F.3d 684, 687 (7th Cir. 1996) (quoting *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 334 (7th Cir. 1994)). If the non-moving party fails to make a sufficient showing on an element for which she has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The parties agree that the substantive law of Arkansas applies.

Under Arkansas law, to recover under a strict liability theory of product liability, "a plaintiff must prove that the product as supplied was defective so as to render it unreasonably dangerous and that such defect was the proximate cause of the accident." *Yielding v. Chrysler Motor Co.*, 783 S.W.2d 353, 355 (Ark. 1990); Ark. Code Ann. § 4-86-102. A plaintiff may prove the product's defective condition by showing defective design, defective manufacture, or inadequate warning. *Harrell v. Madison County Miss. Mote Co., Inc.*, 370 F.3d 760, 762 (8th Cir. 2004) (applying Arkansas law); *Hill v. Searle Laboratories, Inc.*, 884 F.2d 1064, 1066-67 (8th Cir. 1989) (same). Here, Jett alleges that the Firestone tire on her vehicle was defectively designed or manufactured.

Like strict liability claims, negligence and warranty claims brought under Arkansas law also require that the plaintiff prove that her injuries were proximately caused by the defendant's product. *Mason v. Jackson*, 914 S.W.2d 728, 730 (Ark. 1996) (negligence); *Lakeview Country Club, Inc. v. Superior Products*, 926 S.W.2d 428, 431 (Ark. 1996) (breach of implied warranty of merchantability). Arkansas law provides that proximate cause can be proven by direct or circumstantial evidence. *St. Paul Fire & Marine Ins. Co. v. Brady*, 891 S.W.2d 351, 353 (Ark. 1995); *Yielding*, 783 S.W.2d at 355. Because proximate cause can be shown by circumstantial evidence, the absence of the tire is not fatal to Jett's claim.

However, the Arkansas Supreme Court has instructed, "if direct proof is lacking, a plaintiff must negate other possible causes of the accident by a

preponderance of the possibilities." *Yielding*, 783 S.W.2d at 355. Therefore, although proximate cause can be proven by circumstantial evidence, "[i]t is . . . necessary that there be evidence that would tend to eliminate other causes that may fairly arise from the evidence and that the jury not be left to speculation and conjecture in deciding between two equally probable possibilities." *St. Paul Fire & Marine Ins. Co.*, 891 S.W.2d at 353-54.

Firestone argues that in the light most favorable to Jett, the evidence in the record shows only that the Wilderness AT line of tires had a design defect that led to a higher chance of failure. Jett's expert, Kenneth Pearl, for example, stated in an affidavit that the "population of Firestone tires of which the subject tire is a member contain several significant design defects." Firestone contends that a risk of failure, however, does not establish that the risk materialized in this case. *See Crossley by Crossley v. General Motors Corp.*, 33 F.3d 818, 821 (7th Cir. 1994) ("The mere existence of a defect does not prove that the defect was responsible for subsequent injuries--if a person intentionally drives a defective Blazer off a cliff, the driver's estate cannot recover against General Motors because the vehicle in which the injuries occurred was defective.")

The district court held that Jett's evidence of causation was insufficient to survive summary judgment. According to Federal Rule of Civil Procedure 56(e), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Jett states in her own affidavit that "the tread separation problems with Firestone Wilderness AT tires were exactly what had caused" her accident. Jett's statement of the cause of the accident was outside her personal knowledge and appropriately not considered. *See Whitted v. General Motors Corp.*, 58 F.3d 1200, 1206 (7th Cir. 1995). The depositions of Kenneth Brown, a mechanic, and Vivian Brown, also do not aid Jett. Both testified that they saw Jett's vehicle in the salvage yard after the accident, but neither offers any information helpful in establishing causation.

Both parties submitted affidavits from experts. Firestone's expert, Brian Queiser, stated in his affidavit that tread separation can be caused "by a variety of conditions other than a manufacturing or design defect," including "impact damage; road hazard damage and/or punctures from nails or other objects; improper tire inflation or other servicing, which includes under inflation and overloading; mounting damage; improper vehicle alignment; improper rim components; and operator driving habits." Jett did not submit any evidence that contradicts this statement. Instead, she attempted to demonstrate that none of these other conditions existed in her case, averring in her affidavits, for example, that she "never struck a large object, hazard or pothole" and "never drove the tires in an under inflated condition."

Jett's expert, Ken Pearl, stated in an affidavit that he reviewed photographs of the vehicle and Jett's affidavit, "including her testimony that she did not strike any pot-holes or other large objects or structures, that the inflation pressures and loading were maintained as suggested by the manufacturer, and that the tire never suffered any form of puncture or other damage requiring that the tire be repaired." After stating, "Given the foregoing, . . . and assuming the facts to be true, the failure (tread belt separation) of the present tire would have resulted from the design and manufacturing inadequacies of the recalled tires and not from some extraneous cause or reason."

It is true that under Arkansas law, "[a] properly qualified expert's opinion constitutes substantial evidence unless it is shown that the expert's opinion is without reasonable basis." *Ford Motor Co. v. Massey,* 855 S.W.2d 897, 899 (Ark. 1993). Pearl's conclusion that a defect caused the tire failure lacks a reasonable basis because it relies on information that does not appear in Jett's affidavits. Unfortunately for Jett, her affidavits do not make the broad statements that Pearl attributes to them. Although her affidavit does state that she did not strike any potholes or other large objects, nowhere does she state that the tire "never" suffered any puncture or other damage. Likewise, Jett stated she herself never drove the car in an underinflated condition, but Jett does not aver that the inflation pressures were always maintained properly. Rather, Jett's affidavit speaks only to her own experience while she drove the vehicle, and she does not assert that she was the only person to drive the vehicle. Pearl's conclusion that a defect caused the tire failure, which is based on statements that do not appear in the record, thus lacks a reasonable basis. *See also Navarro v. Fuji Heavy Industries, Inc.*, 117 F.3d 1027, 1031 (7th Cir. 1997) ("a conclusion without any support is not one based on expert knowledge and entitled to the dignity of evidence").

Similarly, Jett's affidavits detailing her driving habits do not sufficienty negate other possible causes of her tire's failure. As the district court recognized, although Jett may not have struck any object while she drove the vehicle, "we do not know whether there were other drivers or what their driving habits and experiences were." This recognition does not amount to improper speculation–rather, it demonstrates that Jett has not sufficiently negated other possible causes of the accident. *See, e.g., Mixon v. Chrysler Corp.*, 663 S.W.2d 713, 714-15 (Ark. 1984) (affirming summary judgment where steering system unavailable for inspection and although affidavits stated that no one known to have access to vehicle tampered with steering system, affidavits did not negate other possible causes of accident including slick roads or normal wear and tear); *Higgins v. General Motors Corp.*, 465 S.W.2d 898, 901 (Ark. 1971) (evidence failed to negate possibility that brake hose rupture resulted from normal and tear or other reasons).

Jett has thus failed to show that a defect in the tire was the probable cause of her tire failure and her injuries. Instead, the evidence shows that a defect was but

one of many possible causes of tread separation.  Summary judgment was thus appropriate in favor of Firestone.  In light of this conclusion, we need not consider Firestone's argument that Jett relied on materials not properly before the court.

### III.   Conclusion

The district court's decision to grant Firestone's motion for summary judgment is AFFIRMED.