# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 24-1298

———————————————

Risie Howard, as Personal Representative of the Estate of Mrs. George Howard, Jr.

*Plaintiff - Appellant*

v.

Hormel Foods Corporation, Jim Snee, Chairman of the Board

*Defendant - Appellee*

————————

Appeal from United States District Court
for the Eastern District of Arkansas - Central

————————

Submitted: April 17, 2025
Filed: August 8, 2025

————————

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

————————

KELLY, Circuit Judge.

In October 2019, Vivian Howard passed away after a brief hospitalization. Risie Howard, Howard's daughter and personal representative of her mother's estate (the Estate),[1] brought various state law claims against Hormel Food Corporation

———————————————

[1]Vivian Howard was also known as Mrs. George Howard, Jr., so the Estate's name was the Estate of Mrs. George Howard, Jr.

(Hormel), alleging its products were the cause of death. The district court[2] excluded one of the Estate's expert reports and granted Hormel's motion for summary judgment. The Estate appeals,[3] and we affirm.

## I.

In September 2019, Howard, 93 years old, was admitted to the hospital, where she was diagnosed with dysphagia, a condition that makes it difficult to swallow. A speech therapist recommended that she eat Hormel's puree-based meals and drink liquid additives. After discharge, Howard's caretakers, including her daughter, gave Howard six Hormel meals every day for the next month, as well as four daily servings of Hormel additive[4] in her water (collectively the "subject products"). The subject products contained labels that showed the nutritional value of each product, including the amount and percent recommended daily value of sodium.

On October 15, Howard experienced two cardiac arrests at home and one in the ambulance on her way to the hospital. At the hospital, she experienced a fourth. Doctors diagnosed Howard with, among other things, hypernatremia—increased sodium concentration in the blood. Records showed that Howard's sodium levels had been consistently in the normal range prior to her hospitalization. After five days in the hospital, Howard died on October 20. Risie Howard hired a forensic pathologist who concluded, after conducting an autopsy, that the cause of death was bronchopneumonia.

The Estate sued Hormel, alleging claims of strict products liability, breach of implied warranty, negligence, and wrongful death. The Estate and Hormel each

---

[2]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

[3]We grant the Estate's uncontested motion to supplement the record.

[4]The additive was meant to thicken the water.

moved to exclude the other's expert reports, and filed cross-motions for summary judgment. The district court granted Hormel's motion to exclude one of the Estate's expert reports—Dr. Adel Shaker's—but denied it as to the rest. The district court later denied the Estate's motion for summary judgment and granted Hormel's motion for summary judgment on all claims. The Estate appeals.

II.

A.

We begin with the expert evidence. The district court found that the Estate had failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B) with regard to Dr. Shaker's report. Specifically, the district court concluded the report "[did] not contain an opinion," and instead "[was] merely a short recitation of facts." We review its decision to exclude the report for abuse of discretion. Johnson v. Friesen, 79 F.4th 939, 943 (8th Cir. 2023).

Under Rule 26(a)(2)(B), litigants who retain witnesses to provide expert testimony must produce a written report containing, among other items, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). A party who fails to timely disclose this required information may not use the expert's testimony in a summary judgment motion, unless such "failure was substantially justified or harmless." See Fed. R. Civ. Proc. 37(c)(1); Vandeberg v. Petco Animal Supplies Stores, Inc., 906 F.3d 698, 702–04 (8th Cir. 2018) (affirming exclusion of expert report at summary judgment stage for failure to satisfy Rule 26(a)(2) disclosure requirements).

On appeal, the Estate does not meaningfully challenge the district court's finding that Dr. Shaker's report did not comply with Rule 26. Rather, the Estate argues Rule 26's requirements do not apply because it offered the report only for rebuttal and impeachment purposes. But Rule 26(a)(2)(B)'s disclosure requirements apply to expert reports used in rebuttal, too. See Fed. R. Civ. P. 26(a)(2)(D) (noting

that "[a] party must make [Rule 26(a)(2)] disclosures" at certain times, and setting a default deadline of 30 days[5] for expert reports "intended solely to contradict or *rebut evidence* on the same subject matter identified by another party" (emphasis added)). And while "Rule 26 does not require the disclosure of evidence used solely for impeachment purposes," Wegener v. Johnson, 527 F.3d 687, 690 (8th Cir. 2008), the Estate has not articulated how Dr. Shaker's report could have served as impeachment evidence. Instead, the Estate offers cursory assertions that Dr. Shaker "was scheduled to provide . . . impeachment testimony" and "[t]herefore . . . no disclosure of his impeachment evidence" was needed. A review of Dr. Shaker's report and Hormel's retained expert's report shows that, at times, they are consistent and, at other times, they address entirely different matters. In short, the Estate has failed to show how "facts asserted or relied upon in [Hormel's expert] testimony are false." Id. at 691. Therefore, Rule 26(a)(2)(B)'s disclosure requirements applied to Dr. Shaker's report, and the Estate did not sufficiently explain why its failure to comply was substantially justified or harmless. The district court did not abuse its discretion in excluding the report.[6]

### B.

Next, we turn to the district court's grant of summary judgment to Hormel. We review this decision de novo, viewing the record in the light most favorable to

---

[5]Of course, if a report is offered solely for rebuttal purposes, then the default deadline for when the disclosure is due changes accordingly. Compare Fed. R. Civ. P. 26(a)(2)(D)(i), with Fed. R. Civ. P. 26(a)(2)(D)(ii). But even if Dr. Shaker's report was properly classified as rebuttal evidence, the Estate also failed to meet the 30-day deadline, as the Estate did not comply with the disclosure requirements at all.

[6]We need not address the Estate's arguments that Dr. Shaker's opinions, to the extent he offered any, would be admissible under Federal Rule of Evidence 702. The requirements under Federal Rule of Civil Procedure 26(a)(2)(B) must be satisfied regardless of whether an expert's opinions are ultimately admissible under Federal Rule of Evidence 702. Cf. Friesen, 79 F.4th at 941 n.2, 943–44 (noting one expert was excluded under Rule 702 and another expert was excluded under Rule 26(a)(2)(B)).

the Estate and giving the Estate the benefit of all reasonable inferences. <u>Richardson v. Omaha Sch. Dist.</u>, 957 F.3d 869, 876 (8th Cir. 2020). "Summary judgment is only appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Cincinnati Ins. Co. v. Jacob Rieger & Co.</u>, 58 F.4th 386, 390 (8th Cir. 2023) (quoting Fed. R. Civ. P. 56(a)). In this diversity suit, we apply Arkansas substantive law and follow the decisions of the Arkansas Supreme Court. <u>See</u> <u>Olmsted Med. Ctr. v. Cont'l Cas. Co.</u>, 65 F.4th 1005, 1008 (8th Cir. 2023).

1.

We first consider the Estate's products liability claims. Under Arkansas law, to prove a products liability claim, the Estate must show, among other things, that the product was defective. <u>See</u> <u>Lakeview Country Club, Inc. v. Superior Prods.</u>, 926 S.W.2d 428, 431 (Ark. 1996); <u>Pilcher v. Suttle Equip. Co.</u>, 223 S.W.3d 789, 794 (Ark. 2006) (listing elements of product liability claim). Even if the product was defective, the Estate must also show the defect rendered the product "unreasonably dangerous." <u>Farm Bureau Ins. Co. v. Case Corp.</u>, 878 S.W.2d 741, 744 (Ark. 1994); <u>see also</u> Ark. Code. Ann. § 16-116-202(7)(A) (2016) (defining "unreasonably dangerous"). Arkansas law generally recognizes "three varieties of product defects: manufacturing defects, design defects, and inadequate warnings." <u>West v. Searle & Co.</u>, 806 S.W.2d 608, 610 (Ark. 1991) ("<u>West I</u>"). The Estate alleged manufacturing defect and failure to warn claims.

Starting with the manufacturing defect claim, the Estate argues the subject products are defective because they "are unreasonably dangerous due to the high level of sodium in them." Here, the record shows that each of the individual subject meals contained roughly twenty percent of the daily recommended sodium intake, and that one serving of the additive contained less than ten percent, at most. The Estate has not presented any evidence or expert testimony to show that these amounts made the products defective, or that any such defect was unreasonably dangerous. <u>See</u> <u>Lakeview</u>, 926 S.W.2d at 431; <u>Farm Bureau</u>, 878 S.W.2d at 744. The Estate also

asserts "[c]onsumers use [the subject products] in combination" and that "their combined effect is deadly." But the Estate has failed to offer legal or evidentiary support for its assertion that evaluating the subject products' defectiveness, or dangerousness, turns on the amount of sodium from the combined consumption, as opposed to the amount consumed from one individual subject product. The district court did not err in granting summary judgment on the Estate's manufacturing design claim.[7]

Turning to the Estate's defective warning claim, generally "a manufacturer has a duty to warn the ultimate user of the risks of its product." West I, 806 S.W.2d at 613. The Estate argues the subject products should have included a warning about the products' sodium levels, the number of meals to consume daily, and the cumulative effects of consuming multiple products in one day. The Estate points out that Hormel advertises many of the subject products for patients with difficulty swallowing, and that Hormel's expert agreed elderly patients with dysphagia are at an increased risk of dehydration and hypernatremia. But the Estate failed to submit expert testimony on whether the subject products' sodium levels, even for individuals with dysphagia, were unreasonably dangerous. Because making these determinations is outside the ordinary common experience of a juror, the failure to offer expert testimony in support is fatal to the claim.[8] See Dancy v. Hyster Co., 127 F.3d 649, 653 (8th Cir. 1997) (applying Arkansas law and holding expert testimony

---

[7]The district court alternatively evaluated the Estate's claim based on res ipsa loquitur principles. On appeal, the Estate makes only undeveloped, passing references to res ipsa loquitur, so we do not consider this issue. See Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, 908 F.3d 313, 324 (8th Cir. 2018).

[8]Even if expert testimony may not be necessary to prove that food labels were defective if the labels were inaccurate, cf. Watts v. St. Edward Mercy Med. Ctr., 49 S.W.3d 149, 410–11 (Ark. Ct. App. 2001) (holding plaintiff did not need to provide expert testimony on her claim that her broken hip caused pain), the Estate does not dispute that the subject products' nutritional labels accurately reflected the sodium levels in the subject products.

was required to establish design defect because jurors do not likely have a "'common understanding' about how products are designed"); see also Mitchell v. Lincoln, 237 S.W.3d 455, 460 (Ark. 2006) (collecting cases holding that expert medical testimony is generally required in malpractice cases because "alleged medical negligence is not within the comprehension of a [lay] jury"). Without sufficient evidence to show the subject products were unreasonably dangerous for individuals with dysphagia, the Estate cannot show it was unreasonably dangerous to not include additional warnings. The district court properly granted summary judgment to Hormel on the Estate's failure to warn claim.

2.

Next, we address the Estate's breach of implied warranty claim. To prove breach of the implied warranty of merchantability, "a plaintiff must prove that [she] sustained damages, that the product was not fit for its ordinary purpose, that the unfitness was the proximate cause of h[er] damages, and that [she] is someone reasonably expected to use the product." Lakeview, 926 S.W.2d at 431. The Estate's argument on this claim is premised on the same argument it raised for the defective manufacturing claim: that the subject products were defective and unreasonably dangerous. See Madden, 481 S.W.3d at 460 ("[B]reach of warranty and strict products liability claims are 'essentially the same' insofar as both require a product defect attributable to the defendant." (quoting Higgins v. Gen. Motors Corp., 699 S.W.2d 741, 743 (Ark. 1985))). Because the Estate failed to submit sufficient evidence that the subject products were defective and unreasonably dangerous, the district court did not err in granting summary judgment to Hormel on this claim.

3.

We turn to the Estate's negligence claim. To prove negligence, a plaintiff must establish "that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries." Duran v. Sw. Ark. Elec. Coop. Corp., 537 S.W.3d 722, 726 (Ark. 2018). Ordinarily,

Arkansas law requires a plaintiff to submit proof of negligence; it is not enough to infer negligence simply from the fact that an accident occurred. See Mangrum v. Pigue, 198 S.W.3d 496, 386–87 (Ark. 2004). Here, the Estate submitted no evidence of how Hormel produced the subject products, much less whether Hormel failed to exercise proper care in doing so. The district court properly granted summary judgment to Hormel on the negligence claim.[9]

4.

We end with the Estate's wrongful death claim. Because the district court properly granted summary judgment on the Estate's underlying tort claims—claims based on products liability, breach of implied warranty, and negligence—summary judgment was proper on the Estate's wrongful death claim too. See Howard v. United States, 964 F.3d 712, 718 (8th Cir. 2020) (applying Arkansas law and explaining that "[i]n the absence of an underlying tort claim, we agree with the district court that [the Estate] cannot sustain a wrongful death claim").

III.

We affirm.

_____

---

[9]As discussed above, we decline to evaluate whether res ipsa loquitur applies.